# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

SELINA BOOTH,

    Plaintiff,

    v.

NORTH SLOPE BOROUGH,

    Defendant.

Case No. 2:15-cv-00005-SLG

## ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court at Docket 37 is Defendant North Slope Borough's ("the Borough") Motion for Partial Summary Judgment. Plaintiff Selina Booth opposed at Docket 40. The Borough replied at Docket 47. Oral argument was held on March 16, 2018.[1]

## BACKGROUND

The facts, viewed in the light most favorable to Ms. Booth for purposes of this summary judgment motion, are as follows:

Ms. Booth was hired as a Division Manager of Administration for the North Slope Borough Police Department ("the Department") in 2010.[2] Ms. Booth's position was a classified position subject to termination only "for cause" according to the Borough's personnel code.[3] As Division Manager, Ms. Booth supervised five people and oversaw the front desk, accounting, and records. She reported directly to the Chief of Police.[4] In

---

[1] *See* Docket 50 (Minute Entry re Oral Argument); Docket 54 (Oral Argument Transcript).

[2] Docket 37-3 (Exhibit B – Welcome Letter) at 1; Docket 40-3 (Selina Booth Deposition) at 6.

[3] *See* Docket 37-19 (Exhibit R – Municipal Code Excerpt).

[4] Docket 37-2 (Booth Deposition) at 10, 11.

January 2015, Jonathan Owen began working as Chief of Police for the Department.[5] Within a few days of his arrival, Chief Owen determined that he did not need an administrative division manager.[6] At the same time, Chief Owen met with the Mayor and proposed a mayoral appointee position be created to serve as the Assistant to the Chief of Police.[7] The Mayor agreed, and Sarah Ellis was hired for the job.[8] Ms. Ellis began in that position in late January or early February 2015.[9]

On February 4, 2015, Chief Owen placed Ms. Booth on paid "investigative leave" from February 4 to February 18, 2015.[10] Chief Owen testified that he initiated the investigation due to concerns about the way Ms. Booth had been treating employees and her role in not preparing the budget and not paying bills promptly.[11] Chief Owen instructed Ms. Booth not to have any contact with the Department's staff or clients during the investigative leave.[12] Chief Owen extended the leave several times in February and March.[13] On April 2, 2015, Chief Owen informed Ms. Booth that the Department was

---

[5] Docket 40-1 (Owen Deposition) at 5.

[6] Docket 37-4 (Exhibit C – Owen Deposition) at 33.

[7] Docket 37-5 (Exhibit D – Sarah Ellis Deposition) at 4.

[8] Docket 37-4 at 40–43.

[9] Docket 37-5 at 3–4.

[10] Docket 37-12 (Exhibit K – February 4, 2015 Memorandum) at 1.

[11] Docket 37-4 at 32.

[12] Docket 37-12 at 1.

[13] Docket 37-13 (Exhibit L – February 18, 2015 Memorandum) at 1; Docket 37-13 (Exhibit L – February 26, 2015 Memorandum) at 2; Docket 37-13 (Exhibit L – March 18, 2015 Memorandum) at 3.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 2 of 15

extending Ms. Booth's investigative leave through April 16, 2015.[14] No further extension occurred but Ms. Booth did not return to work at that time.

On April 7, 2015, the Borough contacted Ms. Booth's attorney to schedule an interview with Ms. Booth as part of its investigation.[15] The interview was initially scheduled for April 16, 2015 but it did not occur because Ms. Booth was having health problems. Ms. Booth then took approved FMLA leave from April 22, 2015 to May 11, 2015.[16]

When Ms. Booth returned to work on May 13, 2015, she learned that Sarah Ellis had moved into Ms. Booth's former office and had taken over a number of Ms. Booth's former duties.[17] Ms. Booth contends her new office was a former storage closet and she was largely prevented from resuming her job duties or accessing files that would be necessary for performing her work.[18] Ms. Booth also states that her co-workers and supervisor ignored her and otherwise made her uncomfortable upon returning to work.[19]

On June 8, 2015, Ms. Booth received a letter from Chief Owen notifying her that her position had been eliminated as part of a reduction in force ("RIF").[20] Her final day

---

[14] Docket 37-13 (Exhibit L – April 2, 2015 Memorandum) at 4.

[15] Docket 18 (Am. Compl.) at 4, ¶ 15; *see* Docket 20 (Answer) at 3, ¶ 15.

[16] Docket 37-14 (Exhibit M – FMLA Request and Approval); Docket 18 at 5, ¶ 18; Docket 20 at 4, ¶ 18.

[17] Docket 40-3 at 37, 39–40; *see* Docket 40-2 (Defendant's Responses to First Discovery Requests) at 4–6 (chart showing significant overlap between duties of Division Manager and Assistant to the Director positions).

[18] Docket 40-3 at 39–40; Docket 37-15 (Exhibit N – Email).

[19] Docket 40-3 at 37–39.

[20] Docket 37-8 (Exhibit G – Letter). The Borough contends that the decision to institute the RIF was made well before June 8, 2015, beginning with Chief Owen's determination soon after his

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 3 of 15

of work was June 8, 2015.[21] The Borough acknowledges that no other Police Department employees were terminated as a result of the decision to reorganize the Department; two police lieutenant positions were eliminated, but both lieutenants were placed in other positions within the Department.[22] The Borough also acknowledges that no cost savings resulted from the reorganization.[23]

On August 17, 2015, Ms. Booth filed a complaint in the Superior Court for the State of Alaska, Second Judicial District at Barrow.[24] On September 25, 2015, the Borough filed a Notice of Removal with this Court.[25] On May 23, 2016, Ms. Booth filed her Amended Complaint.[26]

---

arrival that the Division Manager position represented an unnecessary "layer of bureaucracy." Docket 37-4 at 21–22. The Borough provides evidence that the decision to eliminate the Division Manager position occurred prior to Ms. Booth's termination, including a proposed organizational chart showing the Division Manager position removed and the Assistant to the Director position added, which was completed on or before February 6, 2015. Docket 37-6 (Exhibit E – Organizational Chart) at 6. The Borough states that this change was made permanent when the new budget was confirmed on March 27, 2015, although the new budget did not go into effect until July 1, 2015. *See* Docket 37-7 (Exhibit F - Budget). Sarah Ellis was hired for the Assistant to the Director position at either the end of January 2015 or the beginning of February 2015. Docket 37-5 at 3–4.

Ms. Booth counters that the Borough's primary intent was to terminate her for cause, and the RIF was a sham. Docket 40 at 11–12. In its reply, the Borough acknowledges that summary judgment on this issue is not warranted. Docket 47 at 6.

[21] Docket 37-16 (Exhibit O – Email) at 1. In an email to counsel for the Borough, dated June 8, 2015, Ms. Booth's counsel stated that "[Ms. Booth] considers herself constructively terminated, effective immediately." Docket 37-16 at 1.

[22] Docket 40-2 at 8, ¶ 7.

[23] Docket 40-2 at 8, ¶ 5.

[24] *See* Docket 1-1 (State Compl.).

[25] Docket 1 (Notice of Removal).

[26] Docket 18.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 4 of 15

In her Amended Complaint, Ms. Booth brings claims for wrongful discharge (Count 1), wrongful termination in violation of public policy (Count 2), intentional infliction of emotional distress (Count 3), violations of the Alaska Family Leave Act and the Family Medical Leave Act (Count 4), violations of state and federal disability discrimination laws (Count 5), violations of state and federal age discrimination laws (Count 6), wrongful retaliation (Count 7), and violations of state and federal due process rights (Count 8).[27] Ms. Booth seeks compensatory damages for lost wages, employment benefits, retirement benefits, and emotional distress, as well as costs and attorney's fees and such other relief as the Court deems appropriate.[28]

On November 30, 2017, the Borough filed the instant motion, in which the Borough seeks summary judgment on Counts 3, 4, 7, and 8. At oral argument on March 16, 2018, the Court granted the Borough's motion as to Count 7, as to the claim for a violation of the Alaska Family Leave Act of Count 4, and as to the reputational aspect of Count 8.[29]

## DISCUSSION

### I. Jurisdiction and Applicable Law

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because it is a civil action with certain claims arising under federal law, 29 U.S.C. § 2601 *et seq.*, 42 U.S.C. § 12101 *et seq.*, 29 U.S.C. § 621, *et seq.*, and the Due Process Clause of the Constitution. The Court has supplemental jurisdiction over Ms. Booth's related state law claims.[30]

---

[27] Docket 18 at 7, ¶ 27 – 11, ¶ 60.

[28] Docket 18 at 11.

[29] Docket 50; Docket 54 at 30–31.

[30] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 5 of 15

The Court applies federal procedural law; Alaska substantive law applies to the state law claims.[31]

## II. Legal Standard

Federal Rule of Civil Procedure 56(c) directs a court to grant summary judgment if the movant "show[s] that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[32] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[33] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[34]

## III. Analysis

The Borough seeks summary judgment on four of Ms. Booth's claims; each is addressed below.

### A. Intentional Infliction of Emotional Distress

"Ordinarily, a claim under the Alaska Workers' Compensation Act is the exclusive

---

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[31] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[33] *Id.* at 248.

[34] *Id.* at 249–50.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 6 of 15

remedy for an employee's injury."[35] The Borough asserts that this exclusivity provision of the Alaska Workers' Compensation Act bars Ms. Booth's claim for intentional infliction of emotional distress ("IIED"), citing *Elliott v. Brown* in support.[36] In *Elliott*, two employees filed suit against their employer for assault and battery after their supervisor shoved one employee and hit the other.[37] The Alaska Supreme Court held that a supervisor is a "third person" pursuant to AS 23.30.265 and that the exclusivity provision precluded the employees from maintaining an intentional tort claim against the employer.[38]

Ms. Booth responds that "[n]ot all damages claims arising in the workplace are swept up in the ambit of workers compensation, especially when the damages claimed are in a category that the Act does not cover."[39] In support, Ms. Booth cites *VECO v. Rosebrock*, a case in which the Alaska Supreme Court held that damages for emotional distress caused by sexual harassment in the workplace are not barred by the exclusivity provision of the Alaska Workers' Compensation Act.[40] In reply, the Borough notes that

---

[35] *Rosales v. Icicle Seafoods, Inc.*, 316 P.3d 580, 584 (Alaska 2013) (citing AS 23.30.055).

[36] Docket 37 at 15.

[37] 569 P.2d 1323, 1325 (Alaska 1977).

[38] *Id.* at 1325–26. The Supreme Court also held that, as to the supervisor, "the compensation remedy should not be exclusive when an employee commits an intentional tort on a fellow worker" and reversed the trial court's grant of summary judgment in favor of the supervisor. *Id.* at 1327.

[39] Docket 40 at 14. At oral argument, counsel for Ms. Booth elaborated on this argument, pointing to the fact that while physical injuries occurring in the workplace are presumed to warrant damages under the statute, the same is not true of mental injuries. *See* AS 23.30.120 (establishing presumption of compensability that does not apply to mental injury from work-related stress); AS 23.30.010 (stating that "[c]ompensation and benefits under this chapter are not payable for mental injury caused by mental stress," unless it is established that the work stress was unique and was the primary cause of the injury).

[40] 970 P.2d 906, 917 (Alaska 1999) (holding "[i]t would be inconsistent with the legislative purpose of affording complete relief to those injured by discrimination to hold that nonduplicative damages

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 7 of 15

the plaintiff's claim in *VECO* arose under AS 18.80.220, a statute that "prohibits racial discrimination in hiring, promotion, compensation, and other terms, conditions, or privileges of employment"; it was not a common law IIED claim, as is the case here.[41] Furthermore, the Court in *VECO* noted that "the objective of [AS 18.80] was to afford complete relief to parties injured by discrimination."[42] In the instant case, no such legislative mandate for complete relief exists.

Nevertheless, the *VECO* Court expressly "join[ed] the courts of many other states which have held that the exclusive remedy provisions of their workers' compensation laws do not bar intangible injury claims resulting from sexual harassment."[43] While the instant

---

are barred by the exclusive remedy provision of the Workers' Compensation Act.").

[41] *VECO*, 970 P.2d at 910; *see also Kennedy v. Municipality of Anchorage*, 305 P.3d 1284, 1286 (Alaska 2013). In *Kennedy*, the Alaska Supreme Court held that "mental anguish damages are available for violations of AS 18.80.220." In that case, two police officers filed suit under AS 18.80.220, alleging they were the victims of racial discrimination and retaliation. *Kennedy*, 305 P.3d at 1285. The primary issue before the Court was whether the assertion of "garden-variety mental anguish claims" waives the physician and psychotherapist privilege. However, because the Court did not reference the Alaska Workers' Compensation Act as a bar to the plaintiffs' claims of mental anguish, Ms. Booth asserts that *Kennedy* suggests that the statute is not a bar to her IIED claim. Docket 40 at 14–15; *but see* Docket 37 at 16 n. 58 (citing *Norcon, Inc. v. Kotowski*, 971 P.2d 158, 170 (Alaska 1999) ("[Plaintiff's] tort claims for IIED and NIED might have been subject to [the Alaska Workers' Compensation Act's exclusivity provision] had the defense been timely raised." (citing *Elliott*, 569 P.3d at 1325–27))).

[42] *VECO*, 970 P.2d at 917 (citing *Loomis Elec. Protection, Inc. v. Schaefer,* 549 P.2d 1341, 1343 (Alaska 1976)). The Court in *VECO* noted that because "[t]he Alaska Workers' Compensation Act does not provide compensation for emotional distress which does not result in permanent or partial disability," the plaintiff in that case would not receive duplicative damages if allowed to proceed on the emotional distress claim. *Id.* Here, the Borough contends that "emotional distress damages in Booth's case would be duplicative . . . . [because] [h]er complaint includes a claim for wrongful termination in violation of public policy." Docket 47 at 3. However, Ms. Booth's decision to plead both IIED and wrongful termination in violation of public policy claims does not affect whether the Alaska Workers' Compensation Act precludes her IIED claim.

[43] *VECO*, 970 P.2d at 917. Notably, some of the cases the Alaska Supreme Court cited involved common law IIED claims. *See Hart v. National Mortgage & Land Co.*, 189 Cal.App.3d 1420, 1431 (1987) (holding IIED claim not precluded because "[t]he infliction of emotional distress continues to be one for which the workers' compensation provides no remedy"); *O'Connell v. Chasdi*, 511

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 8 of 15

case did not involve sexual harassment, the rationale behind *VECO* supports a reading of the Alaska Workers' Compensation Act as not precluding damages for an IIED claim. Because "[t]he Alaska Workers' Compensation Act does not provide compensation for emotional distress which does not result in permanent or partial disability," the concern that formed a basis for the statute's exclusivity provision—the possibility of a worker's compensation award and a duplicative damage award—is not present here.[44] Therefore, the Court concludes that the Alaska Supreme Court would likely find that the exclusivity provision does not bar Ms. Booth's IIED claim.[45] Accordingly, the Borough is not entitled to summary judgment on this claim.

B. Violation of the Family Medical Leave Act[46]

"The FMLA creates two interrelated substantive rights for employees. First, an employee has the right to take up to twelve weeks of leave for the reasons [enumerated in the statute]. Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave."[47] An employer violates the FMLA if it considers the

---

N.E.2d 349, 350 (Mass. 1987); *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 120 (N.C. 1986).

[44] *See VECO*, 970 P.2d at 917.

[45] *See In re Kekauoha-Alisa*, 674 F.3d 1083, 1087–88 (9th Cir. 2012) ("Absent a controlling state court decision, [the court's] duty is to predict how the highest state court would decide the issue." (citing *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990))).

[46] Ms. Booth's Amended Complaint also sought damages under the Alaska Family Leave Act, AS 39.20.500, *et seq*. Docket 18 at 9, ¶ 43. At oral argument, counsel for Ms. Booth conceded that there is no private right of action under the AFLA and the Court granted summary judgment on that claim to the Borough. Docket 54 at 15, 30; Docket 50.

[47] *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (internal citations omitted).

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 9 of 15

taking of FMLA leave as a negative factor in an employment decision, including termination.[48]

Ms. Booth's Amended Complaint alleges that the Borough violated the FMLA because "[w]hen [Ms.] Booth returned from []FMLA leave in May 2015, the Borough did not allow her to return to the same or an equivalent position" and then terminated her in June 2015.[49] The Borough asserts that "there is no genuine dispute that Owen's decision to eliminate her position occurred *before* Booth took medical leave."[50] Therefore, according to the Borough, "the Borough's decision to eliminate [Ms. Booth's] position predated her FML and was necessarily unrelated to her leave."[51] The Borough also asserts that "Booth's FMLA claim fails because she neither alleges nor suffered economic damages associated with her medical leave."[52]

While the Borough maintains it is undisputed that the Borough had already decided to eliminate Ms. Booth's position before she took the FMLA leave, Ms. Booth disagrees. Under Ms. Booth's theory, the decision to implement the RIF without giving Ms. Booth an opportunity to be considered for another position reflected an intention to circumvent the process of for-cause termination. The ambiguous circumstances of Ms. Booth's

---

[48] *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) ("In order to prevail on her claim, [a plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.").

[49] Docket 18 at 9, ¶ 41.

[50] Docket 37 at 19.

[51] Docket 37 at 20.

[52] Docket 37 at 18.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 10 of 15

investigative leave—that was ongoing from February 4, 2015 to April 15, 2015—raise the possibility that Ms. Booth's termination was not strictly the result of a RIF determination made in February 2015, as the Borough contends. Ms. Booth has alleged that she was notified on April 21, 2015 that her investigative leave had ended on April 15, 2015 and that she had been expected to return to work the following day.[53] Ms. Booth then took FMLA leave from April 22, 2015 to May 11, 2015.[54] Ms. Booth was not given notice of the RIF until June 8, 2015, after she had returned to work following the FMLA leave.[55] Drawing all justifiable inferences in Ms. Booth's favor, a reasonable jury could find that Ms. Booth's decision to take FMLA leave was a negative factor in her subsequent termination.[56]

The Borough also contends that Ms. Booth's FMLA claim must fail because she has not alleged economic damages as required under the statute.[57] But Ms. Booth asserts that the ultimate result of the alleged FMLA violation was the loss of her job—an injury for which Ms. Booth seeks "compensatory damages for lost wages, employment benefits, retirement benefits, and emotional distress in an amount to be demonstrated at

---

[53] Docket 18 at 4, ¶ 17; *see* Docket 20 at 4, ¶ 17.

[54] Docket 37-14.

[55] Docket 37-8.

[56] Although the Borough's evidence supports a finding that the Division Manager position was targeted for removal prior to Ms. Booth's FMLA leave, that evidence does not definitively establish that Ms. Booth's FMLA leave was not a negative factor in her termination. *See supra* note 20. Furthermore, the parties agree that Ms. Booth was not notified of her termination until shortly after she returned from taking FMLA leave. *See Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 648 (9th Cir. 2016) (noting "[s]uspicious timing may be circumstantial evidence of a causal link between exercise of FMLA rights and an adverse employment action").

[57] Docket 37 at 19.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 11 of 15

trial, exceeding $100,000."[58] Accordingly, the Borough's motion for summary judgment is denied as to Ms. Booth's FMLA claim.

C. Retaliation

In her Amended Complaint, Ms. Booth asserts that she suffered wrongful retaliation by being "wrongfully terminated because of Chief Owen's history with her husband."[59] The Borough maintains that Ms. Booth's "retaliation claim is based entirely on speculative motives; she cannot show a protected activity or a causal connection between that activity and the Borough's decision to eliminate her position."[60] At oral argument, the Court granted summary judgment to the Borough on this issue.[61]

D. Due Process Violation

---

[58] Docket 18 at 11.

[59] Docket 40 at 13.

[60] Docket 47 at 4.

[61] Docket 50. In order to establish a retaliation claim under both Alaska and federal law, Ms. Booth must show that "(1) she engaged in a protected activity; (2) her employer subjected her to adverse employment action; and (3) there was a causal link between the protected activity and the employer's action." *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 660 (Alaska 2006). The basis for Ms. Booth's retaliation claim is Chief Owen's alleged ill will toward her stemming from an alleged incident between Chief Owen and her husband. Docket 37-2 at 7–9, 17. The primary deficiency in Ms. Booth's retaliation claim is not its speculative nature, but the fact that Ms. Booth has not described a "protected activity" that she engaged in. Ms. Booth contends that Chief Owen "was breaking the law by allowing someone to import alcohol into a village, and when [her] husband challenged his authority, he took issue with it and now he has his revenge." Docket 37-2 at 17. While reporting a matter of public concern to a public body is considered a protected activity, Ms. Booth has not alleged that either she or her husband were attempting to report any aspect of the dispute or any other matter of public interest. *See Okpik v. City of Barrow*, 230 P.3d 672, 678 (Alaska 2010). Ms. Booth's assertion that Chief Owen retaliated against her due to a decades-old grudge he had with her spouse is not a cognizable retaliation claim. Ms. Booth asserts that her retaliation claim is "factually interwoven with her other claims; thus, dismissing it now would not save the parties any time or effort in preparing for trial." Docket 40 at 13. But that is not a basis for allowing the claim to go forward, in light of its clear deficiencies. Accordingly, the Court granted summary judgment on the claim at oral argument. Docket 50; Docket 54 at 31.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 12 of 15

The Amended Complaint asserted two due process claims: (1) "[t]he Borough acted in violation of both the State and Federal constitutions by implementing the RIF without notice or an opportunity for Booth to be heard"; and (2) "[t]he Borough further acted in violation of both the State and Federal constitutions by engaging in a pattern of conduct designed to harm her reputation without providing her the opportunity for a hearing to clear her name and correct the inaccurate impression about her conduct and employment that the Borough created."[62] The Borough's motion for summary judgment addressed both of these claims.[63] However, Ms. Booth's opposition reframes her due process claim; she now asserts that "the Borough used the RIF process as a sham to achieve what it otherwise could not."[64] In its reply, the Borough states that it "does not seek summary judgment on Booth's new reading of her due process claims, but is entitled to summary judgment on the other aspects of her due process claims."[65] At oral argument

---

[62] Docket 18 at 11, ¶ 60.

[63] The Borough has asserted that the Borough code and rules required only that Ms. Booth be given ten-day written notice of termination due to a RIF. Docket 37 at 24–25. Furthermore, the Borough states that Ms. Booth was "legally wrong to suggest that the Borough owed her an opportunity to be heard before implementing the RIF. Nothing in the Borough Code or its Personnel Rules and Regulations creates such a right." Docket 37 at 25.

[64] At oral argument, counsel for Ms. Booth explained: "Our view is Ms. Booth's employment rights are created by [a] suite of code, and we understand that as long as the Borough undoes through code what it has created through code, that's okay. And our position is that when the Borough eliminated Ms. Booth's position, it did so for reasons that were not legitimate reorganizational reasons. They were personal to Ms. Booth." Docket 54 at 28. The Personnel Rules and Regulations describe the reasons for a RIF as "a lack of work, a lack of funds, or reorganization or restructuring." Docket 37-20 at 6. Otherwise, "discharge or separation of an employee with permanent status from a classified position may be for any reason, supported by substantial evidence, that is not arbitrary, capricious or unlawful." Docket 37-19 at 1. The Borough maintains that Ms. Booth was terminated solely due to a valid RIF that eliminated her position in good faith. Docket 47 at 1.

[65] Docket 47 at 5.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 13 of 15

on March 16, 2018, the Court granted summary judgment to the Borough with respect to the reputational claim.[66]

Counsel for Ms. Booth acknowledged that the Borough had fulfilled its obligations regarding notice and opportunity to be heard for the RIF.[67] Therefore, the Borough is entitled to summary judgment on Ms. Booth's due process claims to the extent she claims injury resulting from the Borough's processing of the RIF. However, Ms. Booth's new reading of her due process claim—that the RIF served as pretext for her termination—implicates the same issues at the heart of the remaining claims upon which the Borough does not seek summary judgment.[68] Accordingly, this due process theory may proceed and summary judgment is denied as to it.

## CONCLUSION

In light of the foregoing, the Borough's Motion for Partial Summary Judgment at

---

[66] Docket 50; Docket 54 at 31. The Ninth Circuit has recognized that "[a] person's liberty interest is implicated if the government levels a charge against [her] that impairs [her] reputation for honesty or morality." *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018) (quoting *Guzman v. Shewry*, 552 F.3d 941, 955 (9th Cir. 2009)). However, "to establish that she has a protected liberty interest at stake, a plaintiff must demonstrate that: (1) the accuracy of the charge is contested, (2) there was some public disclosure of the charge, and (3) the charge was made in connection with the termination of employment." *Id.* at 1162 (quotation and alterations omitted). Here, Ms. Booth has not shown that a charge was made against her or that such a charge, even if made, was publicly disclosed.

[67] *See* Docket 54 at 29. On June 8, 2015, Ms. Booth received a letter from Chief Owen informing her that her position had been eliminated via a RIF and that her last day was scheduled to be June 30, 2015. Docket 37-8. This fulfilled the ten-day notice requirement. *See* Docket 37-20 at 6.

[68] This theory is consistent with the allegation in Ms. Booth's Amended Complaint that "[t]he purported 'RIF' followed a lengthy investigation into Booth's conduct, which yielded no evidence of wrongdoing, and a campaign of mistreatment designed to induce her resignation." Docket 18 at 6, ¶ 23.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 14 of 15

Docket 37 is GRANTED with respect to Ms. Booth's procedural due process challenge to the RIF process, alleged as part of Count 8.  The motion is DENIED as to Count 3, the FMLA claim of Count 4, and the remaining due process challenge of Count 8.[69]

DATED this 20th day of July, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[69] The Court previously granted summary judgment to the Borough on the record as to the AFLA claim in Count 4, Count 7, and the due process reputational claim in Count 8. Docket 50. The Borough did not seek summary judgment as to Counts 1, 2, 5, and 6.

Case No. 2:15-cv-00005-SLG, *Booth v. North Slope Borough*
Order re Motion for Partial Summary Judgment
Page 15 of 15